**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 25-cv-02923-PAB-STV

**AUSTIN KIM,**

Plaintiff,

v.

**SCOTT KELLY,** DOUGLAS COUNTY SHERIFF'S OFFICE DEPUTY, IN HIS INDIVIDUAL CAPACITY;
**ANTHONY CORDOVA**, DOUGLAS COUNTY SHERIFF'S OFFICE DEPUTY, IN HIS INDIVIDUAL CAPACITY;
**BENJAMIN ESPINOZA,** DOUGLAS COUNTY SHERIFF'S OFFICE DEPUTY, IN HIS INDIVIDUAL CAPACITY;
**ANDREW SANDERS,** DOUGLAS COUNTY SHERIFF'S OFFICE SERGEANT, IN HIS INDIVIDUAL CAPACITY;

Defendants.

---

**RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS [DOC. 1] COMPLAINT [DOC. 16]**

---

Plaintiff, Austin Kim, by and through his counsel, Jason M. Kosloski of KOSLOSKI LAW, PLLC, Tillman P. Clark of TILLMAN CLARK LAW, LLC, respectfully responds to Defendants' Motion to Dismiss [Doc. 1] Complaint [Doc. 16]. For the reasons set forth in this motion, the Court should deny Defendants' motion. As grounds:

**FACTUAL BACKGROUND**

On the morning of May 9, 2023, Austin Kim was a sixteen-year-old high school junior who enjoyed taking walks before school. (Compl. ¶ 15). At approximate 5:20 AM, Mr. Kim was walking near his home on Quebec Street in Highlands Ranch Colorado. (Compl. ¶¶ 15, 18). He was not

1

loitering. He was not sleepwalking. He was simply exercising his basic right to walk through his own neighborhood. (Compl. ¶¶ 17, 18, 22, 23).

Earlier that morning (apparently at 5:00:03 AM) an unknown caller had contacted 911 to report seeing a "10-11-year-old male walking very slow" who was possibly sleepwalking on Quebec Street. (Compl. ¶ 16). Douglas County Sheriff's Deputies, including Defendants, were dispatched to a "welfare check" on this sleepwalking elementary school-aged boy at approximately 5:01:49 AM. (Doc. 16, Ex. B, 17). Defendants were never dispatched to investigate any sort of crime, including any alleged curfew violation.[1] (Doc. 16, Ex. B at pp. 12-17).

At 5:22 AM, Defendants Kelly and Cordova found Mr. Kim walking on the sidewalk. (Compl. ¶ 18). Mr. Kim was not walking slowly. (*Id.* at ¶ 17). Mr. Kim was obviously not ten or eleven years old. (*Id.*). Mr. Kim was obviously not sleepwalking. (*Id.* at ¶ 22). Mr. Kim was clearly not in need of assistance. (*Id.* at ¶ 23). In fact, Mr. Kim deliberately moved out of his path of travel to avoid walking into Defendants Kelly and Cordova while they stood in front of him. (*Id.* at 21). Defendants Kell and Cordova physically grabbed Mr. Kim and pulled, pushed, and twisted Mr. Kim. (*Id.* at ¶¶ 25, 26). While this was happening, Defendant Espinoza arrived and joined in with Defendants Kelly and Cordova slamming Mr. Kim against the side of a police SUV. (*Id.* at ¶¶ 27, 28). Defendant Sanders arrived and assisted in the violent seizure of Mr. Kim, a 16-year-old highschooler. (*Id.* at ¶¶ 29-31). After they

---

[1] The Douglas County Curfew Ordinance makes it illegal for "any person under the age of eighteen (18) years to loiter on or about any street, sidewalk, curb, gutter, parking lot, alley, vacant lot, park, playground or yard . . . during the hours between 12:00 midnight and 5:00 a.m." (Compl. ¶ 3). The Curfew Ordinance defines "loiter" as "remaining idle in essentially one (1) location, to be dilatory, to tarry or to dawdle, and shall include, but not be limited to standing around, hanging out, sitting, kneeling, sauntering or prowling, in a public place." (*Id.* at ¶ 4).

seized Mr. Kim, Defendants directed a South Metro employee to search Mr. Kim's cell phone. (*Id.* at 35). Ultimately, Mr. Kim was released without citation or charge. (*Id.* at 37, Doc. 16, Ex. B, at p. 3).

**LEGAL STANDARD**

There is a strong presumption against the dismissal of claims under Rule 12(b)(6). *Cottrell, Ltd. v. Biotron Intern., Inc.*, 191 F.3d 1248, 1251 (10th Cir. 1999). Evaluating a Rule 12(b)(6) motion, a court must accept as true "all well-pleaded factual allegations in a complaint and view these allegations in the light most favorable to the plaintiff." *Kerber v. Qwest Group Life Ins. Plan*, 647 F.3d 950, 959 (10th Cir. 2011) (internal citations omitted). Generally, a complaint will survive a Rule 12(b)(6) motion if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Plausible" does not mean "likely to be true," but is, instead, a nudge beyond "conceivable." *See Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008). Most importantly, the court must accept the facts alleged in the complaint as true and construe any reasonable inferences in the light most favorable to the plaintiff. *Sanchez v. Hartley*, 810 F.3d 750, 754 (10th Cir. 2016).

Qualified immunity shields government officials from liability only when their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). To overcome an assertion of qualified immunity in a motion to dismiss, a plaintiff must show that, assuming the allegations in the operative complaint are true, the defendants violated the plaintiff's constitutional rights and that the right was clearly established at the time of the violation. *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). Generally, "this means that there must be a Supreme Court or Tenth Circuit decision on point, or the

3

clearly established weight of authority from other courts, must have found the law to be as the plaintiff maintains." *Maresca v. Bernalillo County*, 804 F.3d 1301, 1308 (10th Cir. 2015). But "a general constitutional rule already identified in the decisional law may apply with obvious clarity to the specific conduct in question, even though the very action in question has not previously been held unlawful." *Hope v. Pelzer*, 536 U.S. 730, 741 (2002) (internal quotations omitted). Consequently, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *Id*. "The *Hope* decision shifted the qualified immunity analysis from a scavenger hunt for prior cases with precisely the same facts toward the more relevant inquiry of whether the law put officials on fair notice that the described conduct was unconstitutional" *Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007). The pertinent question in a qualified immunity analysis is whether the "violative nature" of conduct has been clearly established. *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017).

**ARGUMENT**

Plaintiffs has brought four claims: (1) a federal unlawful seizure claim under 42 U.S.C. § 1983 and the Fourth Amendment, (2) a federal unlawful search claim under 42 U.S.C. § 1983 and the Fourth Amendment, (3) a Colorado unlawful seizure claim under CRS § 13-21-131 and Article II, section 7 of the Colorado Constitution, and (4) a Colorado state unlawful search claim under CRS § 13-21-131 and Article II, section 7. Defendants move to dismiss all claims. Defendants assert that they are entitled to qualified immunity.

Defendants claim that they are entitled to qualified immunity on Plaintiffs' § 1983 unlawful seizure claim[2] because there was reasonable suspicion to detain Mr. Kim for violating the Douglas County Curfew Ordinance, probable cause to arrest Mr. Kim for violating the ordinance, and consequently the seizure of Mr. Kim's cell phone was the product of a search incident to a constitutional arrest. Defendants are wrong.

I. **DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY FOR PLAINTIFFS § 1983 CLAIMS.**

   **A. Mr. Kim had clearly established constitutional rights to be free from investigative detentions without reasonable suspicion, free from "community caretaking" detention without specific articulable facts justifying the intrusion, and free from arrest without probable cause.**

A seizure occurs when a law enforcement official places a restraint on a person's liberty such that a reasonable person would not have believed that he or she was free to leave. *Florida v. Royer*, 460 U.S. 491 (1983); *INS v. Delgado*, 466 U.S. 210, 215 (1984); *Petersen v. Farnsworth*, 371 F.3d 1219, 1221-22 (10th Cir. 2004). Warrantless seizures presumptively violate the Fourth Amendment. *Coolidge v. New Hampshire*, 403 U.S. 48 (1951). Exceptions to the warrant requirement are "few in number and carefully

---

[2] Defendants state in their motion that they request the Court grant immunity and dismiss all of Plaintiff's claims. However, Defendants only advance significant argument regarding qualified immunity for Plaintiff's unlawful seizure claim and not Plaintiff's unlawful search claim. "[T]o trigger the plaintiff's the plaintiff's two-part burden, a defendant must first 'adequately present' the qualified immunity defense. And to adequately present the defense, the defendant must not only explicitly raise it, but must also plead the defense beyond a 'perfunctory assertion.' Accordingly, where a defendant makes only a bare assertion of qualified immunity, the plaintiff bears no burden to satisfy the ordinary two-prong test." *Berryman v. Niceta*, 143 F.4th 1134, 1140-41 (10th Cir. Jul. 8, 2025).

Additionally, Plaintiffs' Colorado state claims are not subject to qualified immunity. CRS § 13-21-131(2)(b) ("Qualified immunity is not a defense to liability pursuant to this section").

5

delineated." *United States v. United States District Court*, 407 U.S. 297, 318 (1972). "In determining whether a seizure was constitutional, we balance the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." *Lundstrom v. Romero*, 616 F.3d 1108 (10th Cir. 2010) (internal quotations omitted).

Investigative detentions are a type of seizure of limited scope and duration requiring reasonable suspicion of criminal activity. *See United States v. White*, 584 F.3d 935, 944 (10th Cir. 2009). For an investigative detention to be constitutional "at its inception . . . an officer must have had 'objectively reasonable articulable suspicion' that a detainee committed or is about to commit a crime." *Lundstrom*, 616 F.3d at 1120 (quoting *United States v. Cervine*, 347 F.3d 865, 868-69 (10th Cir. 2003)). Further, courts analyze whether "the officer's actions were reasonably related in scope to the circumstances that first justified the interference." *Id.* "A police officer may take such steps as are reasonably necessary to protect his safety and to maintain the status quo during a detention." *Id.* (citing *United States v. Garcia*, 459 F.3d 1059, 1063 (10th Cir. 2006).

In addition, "police officers may exercise functions – 'community caretaking functions' – wholly separate and apart from detecting, investigating, or acquiring evidence of crime." *Lundstrom*, 616 F.3d at 1120 (quoting *United States v. Garner*, 416 F.3d 1208, 1212 (10th Cir. 2005). "Police officers carrying out such functions may, in certain circumstances, properly detain a person . . . . 'like an investigative detention, . . . a community caretaking detention must be based upon specific and articulable facts which reasonably warrant an intrusion into the individual's liberty' . . . the government's interest must outweigh the individual's interest in avoiding arbitrary governmental interference . . . [and] "the [community caretaking] detention must last no longer than is necessary to

6

effectuate its purpose, and its scope must be carefully tailored to its underlying justification." *Id.* at 1120-21 (quoting *Garner*, 416 F.3d at 1212-13).

"If a police-citizen encounter exceeds the limits of an investigative detention, it then becomes an arrest that must be supported by probable cause." *Id.* (citing *United States v. Rodriguez-Rodriguez*, 550 F.3d 1223, 1227 (10th Cir. 2008). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed" by the person being arrested. *Buck v. City of Albuquerque*, 549 F.3d 1269, 1281 (10th Cir. 2008). "[T]he use of firearms, handcuffs, and other forceful techniques for example, generally indicate an investigative detention has evolved into an arrest."

At the time of the seizure in this case "it was clearly established that a police officer cannot effect an investigative detention without reasonable suspicion." *Lundstrom v. Romero*, 616 F.3d 1108, 1125 (10th Cir. 2010) (citing *Cortez v. McCauley*, 478 F.3d 1108, 1108 (10th Cir. 2007)). "It was similarly established that community caretaking detentions must be based on specific articulable facts warranting an intrusion into an individual's liberty." *Id.* (citing *United States v. Garner*, 416 F.3d 1208, 1212 (10th Cir. 2005)). "It was also unambiguous that a police officer must have probable cause to arrest an individual." *Id.* (citing *Cortez*, 478 F.3d at 1117).

### B. In the light most favorable to Plaintiff, Defendants violated his Fourth Amendment right to be free from unreasonable seizures.

The core of Defendants' argument is that they were investigating a violation of the Douglas County Curfew Ordinance when they seized Mr. Kim. However, this argument is fatally flawed as, in the light most favorable to Mr. Kim, there was never any alleged violation of the curfew ordinance to

7

begin with. Even if there was an alleged violation of the curfew ordinance, there was no reasonable suspicion nor probable cause to believe that Mr. Kim was the person who had violated the curfew ordinance.

> i.     *There was no alleged violation of the curfew ordinance.*

The Douglas County Curfew Ordinance prohibited "any person under the age of eighteen (18) years to loiter on or about any street, sidewalk, curb, gutter, parking lot, alley, vacant lot, park, playground or yard . . . during the hours between 12:00 midnight and 5:00 a.m." Under the curfew ordinance "loiter" is defined as "remaining idle in essentially one (1) location, to be dilatory, to tarry or to dawdle, and shall include, but not be limited to standing around, hanging out, sitting, kneeling, sauntering or prowling, in a public space." Stated simply, the plain language of the curfew ordinance does not blanketly prohibit anyone under the age of eighteen walking down the street, even between before 5AM.

Defendants' argument rests on the assumption that a minor being outside of their home, or walking down the street, in Douglas County before 5AM was breaking the law. That may be what is colloquially thought of by a "curfew" but it is not what Douglas County prohibited. The curfew statute prohibited "loitering." Loitering is "remaining in a certain place for no apparent reason" *U.S. v. Lock*, 466 F.3d 594 (7th Cir. 2006) (citing the Black's Law Dictionary definition of loitering); *see also Bustillos v. City of Artesia*, 591 F.Supp.3d 1051 (D. N.M. 2022) ("to spend time idly or to hang around aimlessly," "to remain in an area for no obvious reason," or "to lag behind"), aff'd by *Bustillos v. City of Artesia*, 98 F.4th 1022 (10th Cir. 2024). More importantly, the Curfew Ordinance defines "loitering" as "remaining idle in essentially one location, to be dilatory, to tarry or to dawdle" and provides a list of

8

the sorts of conduct that is prohibited "standing around, hanging out, sitting, kneeling, sauntering, or prowling, in a public space." Under the principle of statutory construction known as *ejusdem generis*: "where general words follow specific words in statutory enumeration, the general words are construed to embrace only objects similar in nature to those objected enumerated by the preceding specific words." *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105 (2001); *see also In re Las Uvas Valley Dairies*, 598 B.R. 305 (US Bank. D. NM 2019). Here, all of the specific words describing what the ordinance considers "loitering" are limited to remaining in a single location – "standing around, hanging out, sitting, kneeling." Therefore, the remaining words "sauntering, or prowling" should be construed to also involve similar acts of remaining in a single location.

In short, although it is termed a "curfew," the ordinance at issue prohibits minors from loitering. The ordinance does not prohibit traveling, walking, or the simple act of a minor being outside in public. Here, in the light most favorable to Plaintiff, the only act that was alleged from *any* minor (walking down the street) was not illegal. Therefore, Defendants did not have any reason to believe that anyone was violating the curfew ordinance. This is supported by Defendants' own Exhibit B. Defendants were not dispatched to an alleged violation of the curfew ordinance. They were dispatched to a welfare check for an elementary-aged child who was potentially sleepwalking.

> ii. *In the light most favorable to Plaintiff, even if there was an alleged violation of the curfew ordinance, there was not reasonable suspicion nor probable cause that he had violated the curfew ordinance. Further, there was not facts sufficient to justified a detention based on "community caretaking."*

Even if the curfew ordinance somehow prohibited walking down the street (which it did not), Defendants did not have reasonable suspicion nor probable cause to believe that Mr. Kim had violated

the ordinance. The Court must take all facts in the light most favorable to Plaintiff. Plaintiff has alleged that he was a sixteen-year-old high school junior and was obviously not a 10–11-year-old elementary-school-aged boy. Defendants seized Mr. Kim nearly over twenty minutes after the curfew ordinance's application. Mr. Kim was not walking slowly, he was obviously not sleepwalking and responded to Defendants' blocking his path by moving out of the way. This was in direct contrast to the behavior reported by the unknown caller who alleged that they saw a 10-11-year-old walking very slow, potentially sleepwalking, and not responding.

Defendants ask the Court to look to extrinsic evidence and construe facts against Plaintiff by finding that Mr. Kim matched the description of the 10-11-year-old alleged sleepwalker sufficiently to generate reasonable suspicion for a seizure. The Court should not take this invitation at the motion to dismiss stage. At this stage, this is at most a factual question that cannot be resolved through a motion to dismiss. Further, in the light most favorable to Plaintiff, Defendants' seizure went far beyond what would be permitted in an investigative seizure supported by probable cause. They forcefully and violently slammed Plaintiff into a car, handcuffed him, and locked him in the back of a police SUV. In the light most favorable to Plaintiff, this is a wildly excessive use of force over a detention to investigate a potential county ordinance curfew violation.

Defendants next argue that once Mr. Kim told Defendants that he was sixteen years old that Defendants had probable cause to arrest him for violating the curfew ordinance. This fails for several reasons. First, as discussed above, "walking before five a.m." does not violate the curfew ordinance. Second, in the light most favorable to Plaintiff, he did not match the description of the alleged violator of the curfew ordinance half an hour prior (sixteen-year-old high school junior walking with purpose vs. 10-11-year-old unresponsive sleepwalker). Even if the Court considers Defendants' that Mr. Kim

10

matched the description because of the color of his shirt, simply wearing a similar shirt half an hour after a crime does not establish probable cause or "a substantial probability . . . that the suspect committed the crime." *United States v. Soza*, 686 Fed. Appx. 564, 567-68 (10th Cir. 2017) (no probable cause based on "simple fact he matched a rather generic description of the suspect ([Spanish male in his forties wearing a grey shirt and baseball cap]) and was found in close proximity to the crime").

Finally, Defendants argue that they were "concerned about [Plaintiff's] blank stare and refusal to identify himself" so they "extended the detention in order to have medical respond to identify the Plaintiff. Defendants were justified in extending the detention in order to identify Plaintiff, and due to concerns about his welfare." These are simply not the sort of facts that, in the light most favorable to Plaintiff, justify a governmental detention under a "community caretaking" function. In the light most favorable to Plaintiff, he was a high-school junior out for a walk before class when he was suddenly accosted by deputy sheriffs who were blocking his path. In the light most favorable to Plaintiff, not wanting to talk to the police while walking perfectly normally through your neighborhood is not the sort of fact that justifies governmental intrusion over Plaintiff's liberty.

## C. Mr. Kim had clearly established constitutional rights to be free from a search of his cell phone.

The Fourth Amendment protects against unreasonable searches. Warrantless searches are presumptively unreasonable, subject to specifically established exceptions. *Katz v. United States*, 389 U.S. 347, 357 (1967). Defendants state in a single sentence that they are entitled to qualified immunity on Plaintiff's unreasonable search claim because "In terms of the search of the cell phone, this was done by a firefighter without direction from the Deputies."

11

First, the Court should not consider this argument at all. "[T]o trigger the plaintiff's two-part burden, a defendant must first 'adequately present' the qualified immunity defense. And to adequately present the defense, the defendant must not only explicitly raise it, but must also plead the defense beyond a 'perfunctory assertion.' Accordingly, where a defendant makes only a bare assertion of qualified immunity, the plaintiff bears no burden to satisfy the ordinary two-prong test." *Berryman v. Niceta*, 143 F.4th 1134, 1140-41 (10th Cir. Jul. 8, 2025). Here, Defendants barely develop any argument, let alone "adequately present" a qualified immunity defense.

However, even if the Court were to consider this argument, it fails. It is clearly established law that the police must generally obtain a warrant before searching the contents of a cell phone, even when it is seized incident to a lawful arrest. *Riley v. California*, 573 U.S. 373 (2014); *United States v. Gillom*, 274 F. Supp. 3d 1209 (D. Kan. 2017) (holding that "the officer's mere seizure of the phone does not compromise the interest in preserving the privacy of its contents because the phone may only be opened pursuant to a search warrant or one of the well delineated exceptions to the warrant requirement"). It is also clearly established that when "the government coerces, dominates, or directs the actions of a private person conducting the search or seizure" it is a search subject to Fourth Amendment scrutiny. *U.S. v. Benoit*, 713 F.3d 1 (10th Cir. 2013); *U.S. v. Souza*, 223 F.3d 1197 (10th Cir. 2000).

Defendants baldly claim that the search was done "by a firefighter without direction from the Deputies." Not only is it unclear how Defendants' own exhibit establishes this fact, even in the light most favorable to Defendants, but it is directly contradicted by the well-plead allegation in Plaintiff's complaint that Defendants "directed an unknown South Metro employee to search Mr. Kim's cell phone. All other Defendants stood by and did not intervene against this search." (Compl. ¶ 35). And

that "The unknown South Metro employee, acting at the direction and as an agent for a law enforcement officer, searched Mr. Kim's cell phone and provided information contained in Mr. Kim's phone to Defendants." (*Id.* at 35).

Although Defendants have not properly raised qualified immunity on Plaintiff's unconstitutional search claim, Plaintiff has shown that he had a clearly established constitutional right that in the light most favorable to Plaintiff was violated by Defendants. Therefore, the Court must not dismiss this claim.

## II. DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY AS A MATTER OF LAW ON PLAINTIFF'S COLORADO STATE SECTION 13-21-131 CLAIMS. EVEN IF THIS COURT GRANTS DEFENDANTS QUALIFIED IMMUNITY ON PLAINTIFF'S FEDERAL CLAIMS, IT MUST NOT DISMISS PLAINTIFF'S STATE CLAIMS. IN THAT EVENT, THE COURT SHOULD EXERCISE ITS DISCRETION AND RETAIN THE STATE CLAIMS.

Defendants request that the Court grant them qualified immunity and dismiss all of Plaintiff's claims. However, Defendants are not entitled to qualified immunity on Plaintiff's Colorado state section 13-21-131 claims.

Qualified immunity is not a defense to Plaintiff's state claims under C.R.S. § 13-21-131. As the Tenth Circuit has recognized, "Colorado enacted legislation on June 19, 2020, that created a new cause of action for state constitutional rights violations by law enforcement. . . . . Nor is state qualified immunity a defense to [C.R.S. § 13-21-131]." *Sawyers v. Norton*, 962 F.3d 1270, n.23 (10th Cir. 2020).

13

Therefore, even if this Court were to dismiss Plaintiff's federal claims, Defendants are not entitled to qualified immunity as a matter of law. In that event, this Court should exercise its discretion and maintain the state claims given the significant resources already expended in addressing Defendants' requested stay and this instant motion to dismiss. A "district court has discretion to try state claims in the absence of any triable federal claims." *Tatcher Enter. V. Cache County Corp.*, 902 F.2d 1472, 1478 (10th Cir. 1990). "[H]owever, that discretion should be exercised in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." *Id.* "A federal court justifiably may retain jurisdiction of the pendent claims when substantial time and energy have been expended on the case prior to the disposition of the federal claims." *Jones v. Intermountain Power Project*, 794 F.2d 546, 550 (10th Cir.1986) (citing *Transok Pipeline Co. v. Darks*, 565 F.2d 1150, 1155 (10th Cir.1977), cert. denied, 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978))."

**CONCLUSION**

Plaintiff has met his burden that he had clearly established rights to be free from unreasonable seizure under the Fourth Amendment. In the light most favorable to Plaintiff, Plaintiff has plausibly plead an unreasonable seizure claim. Further, even though Defendants do not properly raise qualified immunity regarding Plaintiff's unreasonable search claim, Plaintiff has shown that he had clearly established rights to be free from warrantless searches of his cell phone at the direction of law enforcement, the Court must deny Defendants' Motion to Dismiss [Doc. 1] Complaint [Doc. 16]. Finally, even if the Court were to find that Defendants are entitled to qualified immunity on Plaintiff's federal § 1983 claims, the Court must not dismiss Plaintiff's Colorado state section 13-21-131 claims

because qualified immunity does not apply. Even if the Court finds that Defendants are entitled to qualified immunity, the Court should exercise its discretion and maintain Plaintiff's state claims.

Dated: December 31, 2025

/s/ Jason M. Kosloski
Jason M. Kosloski
KOSLOSKI LAW, PLLC
1401 Lawrence Street, Suite 1600
Denver, CO 80202
(720) 605-6487
jkosloski@koskloskilaw.com
*Attorney for Plaintiff Austin Kim*

/s/ Tillman P. Clark
Tillman P. Clark
TILLMAN CLARK LAW, LLC
1312 17th Street, Unit 2250
Denver, CO 80202
(720) 507-5814
tillmanclarklaw@gmail.com
*Attorney for Plaintiff Austin Kim*

### CERTIFICATE OF SERVICE

I hereby certify that on December 31, 2025, I electronically filed this foregoing **Response in Opposition to Defendants' Motion to Dismiss [Doc. 1] Complaint [Doc. 16]** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

/s/ Jason Kosloski