IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 25-cv-02923-PAB-STV

AUSTIN KIM,

    Plaintiff,

v.

SCOTT KELLY,
ANTHONY CORDOVA,
BENJAMIN ESPINOZA, and
ANDREW SANDERS.

    Defendants.

## REPLY IN SUPPORT OF [ECF 16] MOTION TO DISMISS [ECF 1] COMPLAINT

Defendants, Deputies Scott Kelly, Anthony Cordova, Benjamin Espinoza, and Andrew Sanders (the "Deputies"), in their individual capacities, through the Douglas County Attorney's Office, hereby file this reply in support of their Motion to Dismiss, pursuant to F.R.C.P. 12(b)(1) and (6), each claim in Plaintiff's Complaint [ECF 1, "Complaint"]. In support thereof, the Deputies state as follows:

### INTRODUCTION

On May 9, 2023, Deputies from the Douglas County Sheriff's Office responded to a 911 call that a child was walking along the road before 5 a.m. (ECF 1, ¶ 15). Deputies began looking for the reported child around five (5) a.m. (ECF 1, ¶ 38, Exhibit B). Deputies did not contact Plaintiff until around 5:22 a.m. after checking other locations where he was reported to have been walking. (ECF 1, ¶ 38, Exhibit B). Given that Deputies had a report of a child out walking during

1

curfew and Plaintiff is a child, Deputies had reasonable suspicion to contact him and request that he identify himself. Plaintiff attempted to walk past the Deputies and did not identify himself. (ECF 1, ¶ 24). Deputies detained Plaintiff in an effort to assess his welfare and identify him. (ECF 1, ¶ 23). Deputies called for paramedics to assess the Plaintiff. (ECF. ¶ 34). A South Metro Firefighter found Plaintiff's mother's phone number on Plaintiff's phone, enabling Deputies to call her to the scene. (ECF 1, ¶ 36).

## STANDARD OF REVIEW

Individual defendants in a § 1983 action may raise qualified immunity. *Gutierrez v. Cobos*, 841 F.3d 895 (10th Cir. 2016). Although frequently resolved on summary judgment, "district courts may grant motions to dismiss on the basis of qualified immunity." *Thomas v. Kaven*, 765 F.3d 1183, 1194 (10th Cir. 2014). On a Motion to Dismiss, "it is the defendant's conduct alleged in the complaint that is scrutinized for objective legal reasonableness." *Id.*

The plaintiff bears the initial burden to show both (1) violation of a constitutional right, and (2) that the right was clearly established at the time. *Felders ex rel. Smedley v. Malcom*, 755 F.3d 870, 877 (10th Cir. 2014). Although evidence is viewed in the light most favorable to the plaintiff, "the record must clearly demonstrate the plaintiff has satisfied his heavy two-part burden; otherwise, the defendants are entitled to qualified immunity." *Id.* at 878. If the plaintiff succeeds, the burden shifts to the defendant to show no dispute of material fact as to whether his conduct was reasonable in light of clearly established law and information known at the time. *Id.* at 877.

"Clearly established" means, at the time of the conduct, the law was "'sufficiently clear' that every 'reasonable official would understand that what he is doing'" was unlawful. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011). Existing law must place the constitutionality "beyond debate."

2

*Id.* at 741. "'[T]he result depends very much on the facts of each case,' and the precedents must 'squarely govern' the present case.'" *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004)). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 12 (2015). Consequently, public officials are entitled to qualified immunity in "all but the most exceptional cases." *Rachamim v. Ortiz*, 147 Fed. Appx. 731, 734 (10th Cir. 2005); see also *Harris v. Bd. of Educ. of Atlanta*, 105 F.3d 591, 595 (11th Cir. 1997).

## ANALYSIS

**I.  Plaintiff's detention was lawful because the Deputies had reasonable suspicion, at a minimum, to believe that the Plaintiff had violated the curfew ordinance**

"The Fourth Amendment is not, of course, a guarantee against <u>all</u> searches and seizures, but only against <u>unreasonable</u> searches and seizures." *United States v. Sharpe*, 470 U.S. 675, 682 (1985). There are "three categories of police/citizen encounters." *United States v. Espinosa*, 782 F.2d 888, 890 (10th Cir. 1986). "The second category is referred to as an investigative detention, or a *Terry* stop." *Id*. "A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams*, 407 U.S. 143, 146 (1972).

To determine whether the law was clearly established in the context of probable cause, Courts ask if a defendant had "*arguable* probable cause," meaning a defendant "in the same circumstances and ... possessing the same knowledge … could have reasonably believed that probable cause existed in light of well-established law." *Felders*, supra at 879 (emphasis added). Consequently, the "clearly established" standard requires a high degree of specificity showing the

3

legal principle clearly prohibits the conduct in the particular circumstances. *District of Columbia v. Wesby*, 138 S.Ct. 577, 590 (2018). Specificity is especially important in the warrantless arrest context, where "a body of relevant case law" is necessary to "clearly establish" the answer. *Id*. at 581. Thus, to overcome qualified immunity, Plaintiff must "identify a case where an officer acting under similar circumstances ... violated the Fourth Amendment." *Id*. at 591. Even where an officer lacks *actual* probable cause, he is entitled to qualified immunity if he reasonably but mistakenly concludes probable cause exists. *Cortez v. McCauley*, 478 F.3d 1108, 1120 (10th Cir. 2007).

Probable cause "is not a high bar," and requires only the "kind of 'fair probability' on which 'reasonable and prudent [people,] not legal technicians, act.'" *Kaley v. United States*, 571 U.S. 320, 338 (2014). The analysis of when the officer has either reasonable suspicion or probable cause begins at the point of the seizure. *United States v. Harris*, 313 F.3d 1228, 1235 (10th Cir. 2002).

Here Plaintiff argues that he could not have violated the curfew ordinance under a plain reading of the ordinance. (Doc. 22, pgs. 8-9). Plaintiff invokes *ejusdem generis* for the proposition that because the curfew ordinance describes a broad range of actions involved in loitering after discussing a single location, that the curfew only intends to regulate the conduct of remaining in a specific spot. (Doc. 22, pg. 9). "The canon does not control, however, when the whole context dictates a different conclusion." *Norfolk & W. Ry. Co. v. Am. Train Dispatchers Ass'n*, 499 U.S. 117, 129 (1991). In this context Plaintiff's interpretation does not hold as the next sentence states "the term shall also include such activity [referring back to the definition of loitering] by the driver or passenger in a motor vehicle which is parked, standing or being driven upon any public street, alley, or parking lot." (ECF 16, Exhibit A). This makes clear that the list to which Plaintiff cites

4

for his proposition is just that, a list of prohibited activities. The ordinance lists "loitering shall mean remaining idle in essentially one (1) location, to be dilatory . . . ." In other words, "remaining idle in essentially one (1) location . . ." is merely the first in a list of prohibited activities that further includes "standing around, hanging out, sitting, kneeling, sauntering, or prowling . . ." as is shown by the inclusion of prohibiting the same activities in a moving motor vehicle in the next sentence. The greater context is also ascertained by looking to the stated intent of the ordinance which is "to prevent disturbances, disorderly assemblies, and affrays in any public place . . . ." (ECF 16, Exhibit A). Further the ordinance seeks to address the problem of disturbances, disorderly assemblies, fights, and other criminal activities involving minors . . . who are on public streets and roads and public places in the late evening and early morning hours . . . ." (ECF 16, Exhibit A). The intent of the ordinance in question is not simply to regulate the movement of minors in particular places but upon all of the public places in Douglas County. This is further bolstered by the exceptions in the ordinance allowing for certain types of movement between places as allowed. The Commissioners would not have excepted "going to or from any other activities of any kind which are supervised . . ." if moving between places was not a violation of the ordinance. Further, adopting the argument of Plaintiffs would lead to an absurd result, namely that sauntering, prowling, and driving must be confined to a singular location of unknown size and they once they begin to move they are no longer violating the curfew. Therefore, the Deputies had reasonable suspicion that the Plaintiff was violating curfew by going for a walk before 5 a.m. when they contacted him and the Court should find that the Deputies actions are governed by Qualified Immunity and dismiss claim one.

**II.    Deputies were justified in searching Plaintiff's cell phone due to exigent circumstances**

Absent exigent circumstances there is no exception to the Fourth Amendment requirement for a warrant to search cell phones. *Riley v. California*, 573 U.S. 373, 388 (2014). The Tenth circuit applies a two-part test to determine if there is an exception to the warrant requirement for emergency circumstances, looking at whether "(1) the officers have an objectively reasonable basis to believe there is an immediate need to protect the lives or safety of themselves or others, and (2) the manner and scope of the search is reasonable." *Storey v. Taylor*, 696 F.3d 987, 993 (10th Cir. 2012)(internal citations omitted).

Here, Defendants had information that a child was walking in the area in violation of curfew. (ECF 1, ¶¶ 16; 38). The description of the child was that he was wearing a purple hoody and shorts, matching the Plaintiff. (ECF 16, Exhibit B). Plaintiff attempted to walk past the Deputies and did not identify himself. (ECF 1, ¶ 24). Deputies detained Plaintiff in an effort to assess his welfare and identify him. (ECF 1, ¶ 23). Deputies called for paramedics to assess the Plaintiff. (ECF. ¶ 34). Given deputies' concern about Plaintiff's welfare, his age, and his refusal to identify himself, it was reasonable for paramedics to perform a limited search of Plaintiff's phone for the sole purpose of contacting his mother in order to ensure Plaintiff's safety. This is the reason the qualified immunity exists in cases such as this, to protect law enforcement officers in a no-win situation. If Deputies had released Plaintiff and harm came to him, then they would face the same allegations that they did not do their job. Deputies were reacting to a situation, had reasonable suspicion and arguable probable cause to detain Plaintiff, and legitimate concerns for Plaintiff's safety. Searching his cell phone to alert his parents was reasonable under the

6

circumstances they faced. Therefore, the Court should find that Claim Two is governed by Qualified Immunity and dismiss.

### III. The Court should decline supplemental jurisdiction over Plaintiff's state-law claims

Plaintiff brings each of his claims under both 42 U.S.C. § 1983 and C.R.S. § 13-21-131. The Court should decline supplemental jurisdiction over Plaintiff's claims arising under state law because "when all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state law claims." *Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998). Accordingly, the Court should decline supplemental jurisdiction over Plaintiff's remaining state-law claims upon dismissal of his claims under 42 U.S.C. § 1983.

### CONCLUSION

WHEREFORE, Defendants, Deputies Scott Kelly, Anthony Cordova, Benjamin Espinoza, and Andrew Sanders respectfully request that the Court grant qualified immunity to all claims asserted by Plaintiff, dismiss Plaintiff's claims with prejudice, award the Deputies' attorney's fees and costs pursuant to 42 U.S.C. § 1988(b), and order such additional relief as the Court deems just and proper.

Respectfully submitted this January 13th, 2026.

OFFICE OF THE COUNTY ATTORNEY
DOUGLAS COUNTY, COLORADO

<u>/s/  Andrew C. Steers</u>
Andrew C. Steers, #40139
S. Kelly Dunnaway, #31896
100 Third Street
Castle Rock, CO 80104
Telephone: (303) 660-7414
Email: asteers@douglas.co.us
          kdunnawa@douglas.co.us

*Attorneys for Deputies Scott Kelly, Anthony Cordova, Benjamin Espinoza, and Andrew Sanders*

8

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 13th day of January 2026, I electronically filed the foregoing **REPLY IN SUPPORT OF [ECF 16] MOTION TO DISMISS [ECF 1] COMPLAINT** with the Clerk of Court using the CM/ECF system which will send notification of such filing to all parties of record.

*/s/ Ashley Chamberlain*

*Pursuant to USDC ECF Procedure Version 6.1, a printed copy of this document with original signatures will be maintained by the Office of the Douglas County Attorney and made available for inspection upon request.*