IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 25-cv-02923-PAB-STV

AUSTIN KIM,

Plaintiff,

v.

SCOTT KELLY, Douglas County Sheriff's Office Deputy, in his individual capacity, et al.,

Defendants.

---

**ORDER**

---

This matter comes before the Court on defendants' Motion to Dismiss Complaint [Docket No. 16]. Plaintiff Austin Kim filed a response. Docket No. 22. Defendants filed a reply. Docket No. 23. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I. FACTS[1]

On May 9, 2023, at 5:20 a.m., Mr. Kim was walking near his home. Docket No. 1 at 4, ¶ 15. At the time, Mr. Kim was a 16-year-old high school junior. *Id*. At some point earlier that morning, an unknown caller reported to the police a "10-11-year-old male walking very slowly" on Quebec Street who did not respond to the caller and was possibly sleepwalking. *Id.*, ¶ 16.

At 5:22 a.m., Deputies Scott Kelly and Anthony Cordova of the Douglas County Sheriff's Office were driving together in a marked SUV looking for the 10 to 11 year-old

[1] The well-pleaded facts below are taken from the complaint, Docket No. 1, and are presumed to be true for purposes of ruling on defendants' motion to dismiss. *See Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011).

male when they saw Mr. Kim walking down Quebec. *Id.*, ¶ 18. Mr. Kim was not walking slowly, was obviously not sleepwalking, and obviously was not ten or eleven years old. *Id.*, ¶¶ 17-18. Deputies Kelly and Cordova turned their SUV around and pulled over on the side of Quebec Street in front of Mr. Kim. *Id.*, ¶ 20. Deputies Kelly and Cordova stood on the sidewalk in front of where Mr. Kim was walking. *Id.* at 5, ¶ 21. Mr. Kim responded by moving onto the grass next to the sidewalk, *id.*, and attempted to continue to walk. *Id.*, ¶ 24. Deputies Kelly and Cordova grabbed Mr. Kim to keep him from walking away. *Id.*, ¶ 25. They also pulled and pushed Mr. Kim and twisted his arms. *Id.*, ¶ 26.

While Deputies Kelly and Cordova were engaged with Mr. Kim, Deputy Benjamin Espinoza arrived. *Id.*, ¶ 27. Deputy Espinoza did nothing to intervene , but instead joined in with Deputies Kelly and Cordova in their use of force against Mr. Kim. *Id.* Deputies Kelly, Cordova, and Espinoza ultimately slammed Mr. Kim against the side of their SUV. *Id.*, ¶ 28.

While Deputies Kelly, Cordova, and Espinoza pinned Mr. Kim against the side of their SUV, Deputy Andrew Sanders arrived. *Id.*, ¶ 29. Deputy Sanders did not intervene, but instead grabbed Mr. Kim's left arm and helped Deputies Kelly and Cordova handcuff Mr. Kim's hands behind his back. *Id.*, ¶ 30. Deputies Kelly, Cordova, Espinoza, and Sanders locked Mr. Kim in the back of a sheriff's office SUV. *Id.*, ¶ 31. Deputy Cordova seized Mr. Kim's cell phone from his pocket while the other deputies assisted. *Id.*, ¶ 32.

Defendants kept Mr. Kim locked in the back of the SUV for over half an hour. *Id.* at 6, ¶ 33. While Mr. Kim was locked in the SUV, defendants requested that a team

from South Metro Fire Rescue ("South Metro") come and assess Mr. Kim. *Id.*, ¶ 34. While South Metro employees were speaking with Mr. Kim, defendants directed an unknown South Metro employee to search Mr. Kim's cell phone. *Id.*, ¶ 35. The other defendants stood by and did not intervene. *Id.* The South Metro employee searched Mr. Kim's cell phone and provided information contained in his cell phone to defendants. *Id.*, ¶ 36.

Ultimately, defendants released Mr. Kim from the back of the SUV and let him continue to walk. *Id.*, ¶ 37. Defendants all wrote reports in this case.[2] *Id.* at 6-7, ¶ 38. Deputy Cordova or Kelly wrote that his involvement began at "approximately 0445 hours [4:45 AM]" on May 9, 2023. *Id.* This was false; Deputies Cordova and Kelly arrived at approximately 5:22 a.m. *Id.* Deputy Sanders wrote that his involvement began at "approximately 0459 [4:59 AM]" on May 9, 2023. *Id.* This was false; Deputy Sanders

[2] Defendants ask the Court to take judicial notice of the police reports, arguing that they are central to the complaint. Docket No. 16 at 1-2 n.1. Generally, a court should not consider evidence beyond the pleadings when ruling on a 12(b)(6) motion. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). However, the Tenth Circuit has recognized a "limited exception" to this rule: the "district court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (citation omitted); *see also GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) (recognizing that "if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss"). However, a court has "broad discretion in determining whether or not to accept materials beyond the pleadings." *Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998). When a court takes judicial notice of documents, it may do so only to "show their contents, not to prove the truth of the matters asserted therein." *Tal v. Hogan*, 453 F.3d 1244, 1264 n.24 (10th Cir. 2006) (citation omitted). The Court finds that the police reports are not central to the complaint. Mr. Kim only relies on one aspect of the reports, the time that defendants made contact with Mr. Kim, which he alleges was false. Mr. Kim does not otherwise reference or rely on the reports. Accordingly, the Court will exercise its discretion to not take judicial notice of the police reports.

arrived at approximately 5:26 a.m. *Id.* Deputy Espinoza wrote that his involvement began at "approximate[ly] 0459 [4:59 AM]" on May 9, 2023. *Id.* This was false; Deputy Espinoza arrived at approximately 5:23 a.m. on May 9, 2023. *Id.* Defendants justified their seizure of Mr. Kim by asserting that he was violating Douglas County, Colorado Ordinance 012-002 (the "Curfew Ordinance"), which ends at 5:00 a.m. *Id.* at 2, 7, ¶¶ 3, 39.

## II. LEGAL STANDARD

### A. <u>Motion to Dismiss</u>

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must allege enough factual matter that, taken as true, makes the plaintiff's "claim to relief . . . plausible on its face." *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The 'plausibility' standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible." *RE/MAX, LLC v. Quicken Loans Inc.*, 295 F. Supp. 3d 1163, 1168 (D. Colo. 2018) (citing *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Generally, "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Twombly*, 550 U.S. at 555) (alterations omitted). A court, however, does not need to accept conclusory allegations. *See, e.g.*, *Hackford v. Babbit*, 14 F.3d 1457, 1465 (10th Cir. 1994) ("we are not bound by conclusory allegations, unwarranted inferences, or legal conclusions").

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quotations and alterations omitted); *see also Khalik*, 671 F.3d at 1190 ("A plaintiff must nudge [his] claims across the line from conceivable to plausible in order to survive a motion to dismiss." (quoting *Twombly*, 550 U.S. at 570)). If a complaint's allegations are "so general that they encompass a wide swath of conduct, much of it innocent," then plaintiff has not stated a plausible claim. *Khalik*, 671 F.3d at 1191 (quotations omitted). Thus, even though modern rules of pleading are somewhat forgiving, "a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Bryson*, 534 F.3d at 1286 (alterations omitted).

### B. Qualified Immunity

"Qualified immunity balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). A court should resolve questions of qualified immunity at the earliest possible stage of litigation. *Anderson v. Creighton*, 483 U.S. 635, 646 n.6 (1987). However, a plaintiff facing a qualified immunity challenge still does not have a heightened pleading standard. *Currier v. Doran*, 242 F.3d 905, 916-17 (10th Cir. 2001).

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as

their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, to survive a motion to dismiss under Rule 12(b)(6) "where a qualified immunity defense is implicated, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated their constitutional rights.'" *Hale v. Duvall*, 268 F. Supp. 3d 1161, 1164 (D. Colo. 2017) (quoting *Robbins v. Oklahoma ex rel. Dep't of Human Servs.*, 519 F.3d 1242, 1249 (10th Cir. 2008)). When a defendant raises the defense of qualified immunity, a "plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *T.D. v. Patton*, 868 F.3d 1209, 1220 (10th Cir. 2017) (internal quotation marks omitted). Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case." *Pearson*, 555 U.S. at 236.

## III. ANALYSIS

Mr. Kim brings the following claims: (1) unconstitutional seizure in violation of the Fourth Amendment pursuant to 42 U.S.C. § 1983; (2) unconstitutional search in violation of the Fourth Amendment pursuant to § 1983; (3) unconstitutional seizure in violation of Article II, Section 7 of the Colorado Constitution pursuant to Colo. Rev. Stat. § 13-21-131; and (4) unconstitutional search in violation of Article II, Section 7 of the Colorado Constitution pursuant to § 13-21-131. Docket No. 1 at 7-12. Defendants

move to dismiss Mr. Kim's complaint on the basis of qualified immunity. *See* Docket No. 16 at 3-10.

### A. Claim One – Fourth Amendment Unconstitutional Seizure

Claim One of the complaint alleges that defendants seized Mr. Kim and his cell phone in violation of the Fourth Amendment. Docket No. 1 at 7, ¶ 43. Defendants claim that they had reasonable suspicion that plaintiff had violated the Curfew Ordinance. *See* Docket No. 16 at 4-5. The Curfew Ordinance makes it illegal for "any person under the age of eighteen (18) years to loiter on or about any street, sidewalk, curb, gutter, parking lot, alley, vacant lot, park, playground or yard . . . during the hours between 12:00 midnight and 5:00 a.m." Docket No. 1 at 2, ¶ 3. The Curfew Ordinance defines "loiter" as "remaining idle in essentially one (1) location, to be dilatory, to tarry or to dawdle, and shall include, but not be limited to standing around, hanging out, sitting, kneeling, sauntering or prowling, in a public space." *Id.*, ¶ 4.

#### *1. Constitutional Violation*

The Fourth Amendment provides that the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. A "seizure" of one's person occurs when a government actor terminates one's freedom of movement through means intentionally applied. *See Brower v. County of Inyo*, 489 U.S. 593, 596–97 (1989). A government official "may make a seizure by a show of authority and without the use of physical force, but there is no seizure without actual submission" to the official's show of authority. *Brendlin v. California*, 551 U.S. 249, 254 (2007); *see also United States v. Mosley*, 743 F.3d 1317, 1324 (10th Cir. 2014).

The Supreme Court has identified three types of police encounters with citizens: consensual encounters, investigative detentions, and arrests. *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (en banc). Investigative detentions and arrests are "seizures" within the meaning of the Fourth Amendment. *Id*. "An investigative detention, also called a *Terry* stop, is an encounter in which police may 'stop and briefly detain a person for investigative purposes.'" *Morris v. Noe*, 672 F.3d 1185, 1191 (10th Cir. 2012) (quoting *United States v. Sokolow*, 490 U.S. 1, 7 (1989)). An investigative detention is justified "if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot,' even if the officer lacks probable cause." *Id*. at 1191-92 (quoting *Sokolow*, 490 U.S. at 7). "[R]easonable suspicion is merely a particularized and objective basis for suspecting criminal activity." *United States v. Mabry*, 728 F.3d 1163, 1167 (10th Cir. 2013) (citation omitted). "[A]n investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Florida v. Royer,* 460 U.S. 491, 500 (1983).

Reasonable suspicion requires more than a "hunch," but is "considerably less than proof by a preponderance of the evidence or that required for probable cause." *United States v. Chavez*, 660 F.3d 1215, 1221 (10th Cir. 2011). Reasonable suspicion is based on the "totality of the circumstances." *Id.* at 1222.

The Court finds that the complaint plausibly alleges that defendants lacked reasonable suspicion that Mr. Kim was violating the Curfew Ordinance. The Curfew Ordinance makes it unlawful for an individual under the age of 18 to loiter on or about any street between 12:00 a.m. and 5:00 a.m. Docket No. 1 at 2, ¶ 3. Mr. Kim alleges that the only information defendants had at the time of detaining him was a report of a

10 or 11 year-old boy walking very slowly on Quebec Street who did not respond to the reporting party and who appeared to be sleepwalking. *Id.* at 4, ¶ 16. When defendants encountered Mr. Kim, he was not sleepwalking and was not 10 or 11 years old. *Id.*, ¶ 17. Furthermore, defendants did not encounter Mr. Kim until after 5:00 a.m., when the Curfew Ordinance was no longer in effect. *Id.* at 4, 6-7, ¶¶ 18, 38. Given these allegations, the Court finds that defendants did not have reasonable suspicion to detain Mr. Kim based on a violation of the Curfew Ordinance. Mr. Kim has plausibly alleged that defendants violated his Fourth Amendment rights by seizing him and his cell phone without reasonable suspicion; therefore, he has met his burden under the first prong of the qualified immunity test.

### ***2. Clearly Established Law***

"[W]hen a warrantless arrest or seizure is the subject of a § 1983 action, the defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Cortez*, 478 F.3d at 1120. In the Tenth Circuit, "[a]s a practical matter, in the context of a qualified immunity defense on an unlawful arrest claim, [courts] ascertain whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct." *Corona v. Aguilar*, 959 F.3d. 1278, 1285 (10th Cir. 2020) (internal quotation marks, alterations, and citation omitted). "Arguable probable cause" is another way of saying that the officers' conclusions about whether probable cause existed rested on a reasonable but mistaken belief. *Cortez*, 478 F.3d at 1120–21. This same analysis applies in determining whether an officer had reasonable suspicion for a detention for purposes of qualified immunity. *See Vondrak v. City of Las Cruces*, 535

F.3d 1198, 1207 (10th Cir. 2008) ("In the context of a § 1983 action, moreover, the officer is entitled to qualified immunity if a reasonable officer could have believed that reasonable suspicion existed to detain the plaintiff – i.e., if the officer had arguable reasonable suspicion.") (alterations, internal quotations, and citation omitted).

The Court finds that defendants violated clearly established law because a reasonable officer could not have believed that reasonable suspicion existed to detain Mr. Kim. In *Mglej v. Gardner*, 974 F.3d 1151, 1164 (10th Cir. 2020), the court considered whether a police officer was entitled to qualified immunity for arresting the plaintiff for violating a Utah statute that criminalizes a person's failure to disclose identity if asked for it during a police stop. After analyzing the text of the statute, the court concluded that the officer did not have probable cause to arrest the plaintiff. *See id.* at 1161-62. Turning to the issue of whether the Fourth Amendment violation was clearly established, the court cited *Corona*, 959 F.3d at 1285, for the proposition that, in the context of unlawful arrest claims, a defendant is entitled to qualified immunity if he could have reasonably believed that probable cause existed in light of well-established law. *Id.* at 1164. The court concluded that, "based on the plain language" of the statute, the officer "could not have reasonably believed he had probable cause" to arrest the plaintiff. *Id.* Therefore, the court held that the defendant was not entitled to qualified immunity. *Id*. Here, the plain language of the Curfew Ordinance, like the Utah statute in *Mglej*, is "unmistakably clear." *Id.* at 1165. The curfew is only in effect from 12:00 a.m. and 5:00 a.m. Docket No. 1 at 2, ¶ 3. While defendants were aware of a report of a 10 or 11 year-old child on Quebec possibly sleepwalking, the complaint does not allege what time the reporting party encountered the child and therefore defendants had no

reason to believe that the child was violating the Curfew Ordinance. *See id.* at 4, ¶ 16. Furthermore, when defendants first saw Mr. Kim, the curfew was no longer in effect. *Id.*, ¶ 18. Even if defendants had reason to believe that the 10 or 11 year-old child had violated the Curfew Ordinance, it was obvious that Mr. Kim, who was 16 years old, was significantly older than the child who was the subject of the report. *Id.*, ¶¶ 15, 17. Moreover, when the deputies encountered Mr. Kim, he was not sleepwalking. *Id.*, ¶ 17. As a result, defendants did not have reasonable suspicion to suspect that Mr. Kim was the subject of the earlier report. Thus, Mr. Kim has met his burden under the second prong of the qualified immunity test. Because Mr. Kim has met his burden to overcome defendants' qualified immunity defense, the Court will deny defendants' motion to dismiss Claim One.

### B. Claim Two – Fourth Amendment Unconstitutional Search

In Claim Two, Mr. Kim alleges that defendants violated his Fourth Amendment rights by "engaging in an unlawful search of Mr. Kim's cell phone that was objectively unjustified in light of the facts and circumstances confronting Defendants." Docket No. 1 at 9, ¶ 60. Defendants' only basis for dismissal is that their search of Mr. Kim's phone was a search incident to arrest. *See* Docket No. 16 at 7-8.[3]

Because the Court finds that Mr. Kim has plausibly alleged that he was detained without reasonable suspicion, defendants' argument that they could search him incident

---

[3] Defendants argue in reply that their search was justified due to exigent circumstances. Docket No. 23 at 6-7. The Court will not consider this argument because defendants waived it. *Gutierrez v. Cobos*, 841 F.3d 895, 902 (10th Cir. 2016) ("a party waives issues and arguments raised for the first time in a reply brief") (citation omitted). However, even if the Court did consider it, defendants have shown no exigent circumstances.

to a lawful arrest fails. Accordingly, the Court will deny defendants' motion to dismiss Claim Two.

### C. Claims Three and Four – State Law Claims

Defendants argue that the Court should dismiss Mr. Kim's state law claims because a federal court should decline supplemental jurisdiction over state law claims where all federal claims have been dismissed. *See* Docket No. 16 at 8. Because the Court will not dismiss Claims Three and Four, the Court will deny defendants' motion to dismiss the state law claims.

## IV. CONCLUSION

Therefore, it is

**ORDERED** that defendants' Motion to Dismiss Complaint [Docket No. 16] is **DENIED**.

DATED September 23, 2026.

BY THE COURT:

PHILIP A. BRIMMER
United States District Judge